UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RUTH LaTOURELLE,

    Plaintiff,

    v.

TERRY BARBER, et al.,

    Defendants.

No. 2:10-cv-02667-MCE-CMK

**MEMORANDUM AND ORDER**

Ruth LaTourelle ("Plaintiff") has filed suit against Terry Barber ("Barber"), the County of Siskiyou ("County") and the Siskiyou County Board of Supervisors ("Board" and collectively "Defendants") seeking damages for Defendants' alleged unlawful conduct during the course of Plaintiff's employment with the County. Plaintiff alleges five causes of action: (1) gender and age discrimination in violation of California's Fair Employment and Housing Act; (2) retaliation in violation of 42 U.S.C. § 1983; (3) defamation; (4) intentional infliction of emotional distress; and (5) infringement upon her right to association in violation of 42 U.S.C. § 1983. Before the Court is Defendants' Motion for Summary Judgment ("Motion"), which alternatively requests summary adjudication as to certain issues. In addition, concurrently with her opposition, Plaintiff has filed a Motion to Amend her Second Amended Complaint to add two new claims. For the reasons stated below, Defendants' Motion is granted in part and denied in part, and Plaintiff's Motion is denied.[1]

---

[1] The Court heard oral argument on January 9, 2014.

1

# BACKGROUND

In May 2000, Plaintiff began her employment with the Siskiyou County Planning Department as an Assistant Planner. Defs.' Stmt. of Undisp. Facts ("DUF") No. 1; ECF No. 45-2. As an Assistant Planner, Plaintiff's duties included taking applications for planning actions within the County and assessing and processing the applications. ECF No. 34 at 2.[2] From the commencement of her employment in 2000, until his termination in 2006, Wayne Virag ("Virag") was Plaintiff's direct supervisor. DUF No. 2-3. In August 2004, Virag was promoted from Assistant Planning Director to Planning Director. Id.

As Plaintiff's supervisor, Virag conducted the employee appraisal reports. DUF No. 4. Virag issued Plaintiff a number of Employment Appraisal Reports indicating various problems on her part, including Plaintiff's failure to understand the intricacies of the planning process, the fact that Plaintiff allegedly let her personal opinions interfere with her work, and that Plaintiff purportedly had problems remaining attentive and becoming disorganized. DUF No. 5-6. Virag also received a complaint about Plaintiff's interaction with a customer. DUF No. 9. On April 8, 2005, and July 18, 2005, Plaintiff received written reprimands from Virag. DUF No. 10-11.

On August 12, 2005, Plaintiff lodged a complaint with Ann Merkle, the Personnel Manager for Siskiyou County, alleging that she was being harassed by Virag. DUF No. 13. An investigation into the complaints was performed, and it was determined that she was not being harassed. DUF No. 17 & 19.

Plaintiff then filed a complaint with the California Fair Political Practices Commission against Virag on May 24, 2006, alleging that Virag had failed to disclose certain real estate interests. DUF No. 21. On August, 6, 2006, Virag was terminated by the Siskiyou County Board of Supervisors in response to Plaintiff's allegations. DUF Nos. 22-23.

///

---

[2] Unless otherwise indicated, all page citations are to the ECF assigned page numbers.

1  Terry Barber was appointed as the Interim Director of Planning from June 23, 2006 through November 5, 2006.  DUF No. 26; ECF No. 58-2 at 4.  From November 5, 2006 until June 3, 2007, Barber was the Acting Director of Planning.  DUF No. 27.  On June 3, 2007, the Siskiyou County Board of Supervisors merged the Planning Department with the Public Health, Building and Environmental Health Departments, creating the new Siskiyou County Public Health and Community Development Department.  DUF No. 30.  Barber was the Director of this department until April 15, 2013.  DUF No. 28.

Plaintiff alleges that after Virag was terminated and Barber took over, Barber harassed Plaintiff and was hostile, intimidating, defamatory, demeaning, and callous towards her.  ECF No. 34 at 4.  Plaintiff claims that on three occasions she was denied promotions by Barber in retaliation for her complaints against Virag.  Id. at 4-5.  She also contends that one of the positions for which she applied was given to Rowland Hickle, a younger male with less than two years of experience in planning.  Id.

On October 6, 2008, Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") alleging that she was denied promotion to Associate Planner because of her age and sex.  DUF No. 108-109.  On September 30, 2009, Plaintiff received a right to sue letter from the DFEH.  DUF No. 110.

Although they dispute the date, Plaintiff and Defendants agree that at some time during 2008, Plaintiff provided a draft zoning ordinance to the Chair of the Siskiyou Planning Commission and the County Assessor's Office.  DUF No. 56-57; ECF No. 58-2 at 9.  Plaintiff alleges that this occurred in December 2008, and contends that she was never advised that the document could not be shared.  ECF No. 34 at 7; ECF No. 58-2 at 9.  Defendant, on the other hand, asserts that this occurred sometime prior to April 2008, and that Plaintiff was issued a letter of reprimand for sharing the documents on April 3, 2008.  ECF 45-4 at 5, 52.[3]

---

[3] Plaintiff subsequently received a three-day suspension on or about July 9, 2008, when her job performance allegedly failed to improve within 90 days thereafter.  Plaintiff's SAC challenges that suspension even though its propriety has already been litigated in state court.  Defendants consequently

3

In late January 2009, Plaintiff visited the home of coworker Vurl Trytten uninvited. DUF No. 84. Plaintiff was asked to leave by Trytten's husband, and following this meeting Trytten sent Barber an email reporting the visit and stating that Plaintiff had created a hostile work environment. DUF No. 86; ECF No. 45-4 at 58. In response to the email by Trytten, Ann Merkle performed an investigation into the possible harassment of Trytten and the creation of a hostile work environment by Plaintiff. DUF No. 87. Merkle concluded that the visit to Trytten's home, standing alone, did not demonstrate the creation of a hostile work environment, but that there was a pattern of inappropriate comments and behaviors by Plaintiff that adversely affected her coworkers and violated County policy. DUF No. 90; ECF No. 45-7 at 54-55.

Barber issued Plaintiff a Notice of Disciplinary Action – Termination on February 11, 2009, listing as grounds for termination incompetence or inefficiency, insubordination, and discourteous treatment of the public or other employees. DUF No. 95; ECF 45-4 at 76. Following the issuance of this notice, a Skelly hearing was held before the Deputy Director of Human Services, who concluded that termination was appropriate. DUF No. 96-97. On March 5, 2009 an order was issued terminating Plaintiff's employment with the County.

On July 19, 2009 Plaintiff presented a governmental tort claim to the County of Siskiyou. DUF No. 111. Defendants claim that a Notice of Rejection of this tort claim was sent to Plaintiff on October 16, 2009. DUF No. 114. Plaintiff, however, contends that she never received the Notice of Rejection. ECF No. 58-2 at 15. Plaintiff then commenced this action on September 30, 2010. ECF No. 1. The operative pleading is Plaintiff's Second Amended Complaint (SAC), filed on May 14, 2012. ECF No. 34.

///
///
///

---

moved for summary adjudication as to any claims in that regard on the issue of claim preclusion, but in response Plaintiff concedes that point in her Opposition to the instant motion. See ECF No. 58 at 7. Therefore, summary adjudication is proper as to any claim related to the suspension.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp., 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't. of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials; or showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The nonmoving party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the nonmoving party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

**ANALYSIS**

**A.  Fair Employment and Housing Act**

California's Fair Employment and Housing Act ("FEHA") prohibits discrimination in employment based upon grounds such as, among others, race, religion, national origin, gender, age, and sexual orientation.  Cal. Gov't Code § 12900 et seq.  Plaintiff's first cause of action alleges that the County violated FEHA by harassing and discriminating against her on account of her age and gender.  ECF No. 34 at 8.

As a prerequisite to obtaining judicial relief under FEHA, a plaintiff must comply with California's claims filing requirements.  See Abelleira v. Dist. Ct. of Appeal, 17 Cal.2d 280, 292 (1941) (holding that where an administrative remedy is provided by statute, relief must be sought from the administrative body and exhausted before the courts will act).  A failure to exhaust administrative remedies is a fundamental defect, and the courts may act only to review the final administrative determination of the administrative tribunal.  Lopez v. Civil Serv. Comm'n., 232 Cal. App. 3d 307, 311 (1991).

In October 2008, Plaintiff filed her complaint with the DFEH alleging that the County discriminated against her due to her age and gender by failing to promote her, even though she was the most qualified person for the position.  ECF No. 34 at 6. Defendants contend that Plaintiff's claims under FEHA are thereby limited to the terms of that administrative complaint, namely discrimination based upon the County's failure to promote Plaintiff.  ECF No. 62.  Specifically, Defendants argue that Plaintiff is barred from pursuing a claim of discrimination under FEHA relating to her termination in March 2009 because she did not exhaust her available administrative remedies.  Id.  Plaintiff, on the other hand, claims that the 2008 DFEH complaint encompassed the termination and there was no need to file a new complaint for each act of discrimination.  ECF No. 63.

///

///

1 | The Ninth Circuit addressed the scope of administrative complaints in Oubichon v. N. Am. Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973). The court indicated that to force an employee to return to the state agency every time the employee claims a new instance of discrimination would erect a needless procedural barrier. Id. Thus, the court held a judicial complaint may encompass new acts of discrimination, so long as the new acts occur during the pendency of the charge before the agency, and are like or reasonably related to the allegations of the original charge. Id.

Plaintiff was terminated in March 2009. ECF No. 34 at 8. She received a right to sue from the DFEH in September 2009. Clearly, Plaintiff's termination occurred during the pendency of the original charge. The issue here, therefore, is whether Plaintiff's termination is like or reasonably related to the original allegations contained in her DFEH complaint.

To determine whether new acts of discrimination are like or reasonably related to the original allegations, courts look to the language of the complaint to determine whether the original investigation would have encompassed the additional charges. Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). The Ninth Circuit has found that where a plaintiff alleged specific patterns or practices of discrimination in their original complaint, the administrative agency is likely to uncover new acts of discrimination when investigating these discriminatory practices. See Id. at 1457 (holding that underlying complaint of disparate treatment in terms of employment could lead EEOC to discovery of unequal pay). In comparison, where a complaint lists a specific discriminatory act, an investigation into that act may not reveal additional discriminatory actions. See Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir. 2002) (finding that a charge of discrimination related to an election for a school advisory council would not have resulted in an investigation into discrimination in the context of teaching assignments, class size, or the handling of disputes over the hours in a work day).

///
///

Here, Plaintiff's original complaint with the DFEH alleges that she was denied promotion because of her age and sex. ECF No. 46-1 at 88. The complaint further states that "the current practices by Terry Barber, Director, are to promote and hire less qualified males." Id. In examining this language, it seems clear that Plaintiff filed her DFEH complaint in response to a specific event, the denial of her promotion in favor of a younger male. As such, it would be unlikely that an investigation by the DFEH would uncover any acts of discrimination which are unrelated to that event. Further, the only language of an alleged pattern of discrimination also relates specifically to promotions. Thus, even construing the complaint liberally, it does not appear that Plaintiff's termination is like or reasonably related to the specific instance of discrimination alleged in the complaint.

Moreover, the Ninth Circuit addressed a similar issue in Green v. Los Angeles Cnty. Dep't. of Sch., 883 F.2d 1472 (9th Cir. 1989). In Green, the plaintiff filed a complaint with the DFEH alleging race and sex discrimination and sexual harassment because she was denied training and relocation. Id. at 1474. After receiving a right to sue, she filed a civil complaint against her employer, claiming that the discrimination continued until she was eventually discharged. Id. at 1475. Addressing the scope of the plaintiff's original complaint, the court held that the original charge was directed solely at specific conduct and that no allegations of discrimination were made after the initial filing. Id. at 1476. The court concluded that the alleged discriminatory discharge was unrelated to the original complaint, and that the plaintiff had failed to exhaust her administrative remedies.

Similarly, Plaintiff here filed a DFEH complaint alleging that denying her a promotion was based on unlawful age and sex discrimination. ECF No. 46-1 at 88. As found by the Ninth Circuit in Green, Plaintiff's original charge was related to a specific act and Plaintiff made no further complaints of discrimination. An investigation by the DFEH would not lead to a finding of discrimination in Plaintiff's termination. As such, Plaintiff's termination is not like or reasonably related to the allegations in her DFEH complaint.

9

Thus, Plaintiff failed to exhaust her available administrative remedies relating to her alleged discriminatory termination, and her claims under FEHA must be limited to the issue of failure to promote.

Finally, Defendants contend that the undisputed facts show that Plaintiff was not denied promotion based on age or sex, but because she performed poorly. ECF No. 45-1 at 13. As support, Defendants rely on depositions from coworkers and supervisors of Plaintiff, each stating that they did not believe she was performing work at an Associate Planner level (the position for which Plaintiff was seeking promotion). DUF No. 101. Additionally, Barber stated under oath that the reason Plaintiff was not promoted was because her job performance never approached the level of Associate Planner. ECF No. 45-4 at 9-10. In opposition to Defendants' Motion, Plaintiff submitted her own sworn declaration, claiming that she was doing more work and at a higher level than Mr. Hickle, a male under the age of 40 who received the promotion. ECF No. 58-2 at 14-15.

Although Defendants have submitted evidence that Plaintiff was not performing at an Associate Planner level, apart from Defendant Barber's declaration, Defendants have not pointed to anything in the record indicating that Mr. Hickle was performing at a superior level than Plaintiff, in spite of the fact that he had been working for a shorter period of time. Plaintiff's declaration alleges that she was performing at a higher level than Mr. Hickle. Id. It is not for the court to examine the credibility of witnesses. Thus, based on the contradictory testimony, a jury must decide whether Plaintiff was in fact denied promotion for discriminatory reasons, and summary judgment is not proper for this issue.

### B. Section 1983

Plaintiff's second and fifth causes of action allege violations of 42 U.S.C. § 1983 against Barber for infringing upon her right to oppose and speak out and right to associate, respectively.

///

Unlike claims under FEHA, a plaintiff need not exhaust state administrative remedies as a prerequisite to filing a section 1983 claim. Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982). Further, the Ninth Circuit has indicated that a plaintiff does not have to exhaust internal administrative remedies prior to initiating a civil suit. Fobbs v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1446 (9th Cir. 1994) (overruled on other grounds); see also Kinzli v. City of Santa Cruz, 539 F. Supp. 887, 898 (N.D. Cal. 1982) (where Constitutional claims are brought under section 1983, there is no general exhaustion requirement). Thus, Plaintiff's section 1983 claims remain viable despite her failure to exhaust the internal remedies available to her through the County of Siskiyou.

As an initial matter, in moving for summary judgment, Defendants instead argue that Plaintiff failed to allege the prerequisites of a section 1983 claim set out in Monell v. N.Y. Dep't. of Soc. Serv., 436 U.S. 658, 691 (1978). The Court has already previously rejected that argument. See ECF No. 11 at 12 (finding that Monell does not apply because Plaintiff is not alleging municipal liability). All of Defendants' Monell-related arguments are thus irrelevant and without merit.

### 1. Right to Oppose and Speak Out

Plaintiff alleges that she was retaliated against for speaking out about illegal activities. ECF No. 34 at 9. In order to state a claim against a government employer for a violation of the First Amendment ". . . an employee must show (1) that [s]he engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or her speech was a substantial and motivating factor for the adverse employment action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (internal citations and quotations omitted). Defendants argue that Plaintiff has provided no evidence sufficient to show that Barber took any retaliatory actions following September 30, 2008, and that all allegations of retaliation before this date are barred as stated in a prior order of this Court. ECF No. 45-1 at 19-20. In response, Plaintiff contends that she was retaliated against for her complaints regarding Wayne Virag's illegal activities, leading to her termination in March 2009. ECF No. 58 at 12. Plaintiff asserts that Anne Marsh

indicated in her deposition that she overheard a conversation between Virag and Barber in which the two agreed that an employee needed to be terminated. ECF 58-4 at 26-27. Marsh stated that the conversation occurred on the day of Virag's hearing regarding his termination. Id.

Defendant is entitled to summary judgment on this issue. In opposing summary judgment, the only evidence relied on by Plaintiff is the deposition testimony of Anne Marsh, who identifies herself as a "friendly acquaintance" of Plaintiff. ECF No 58-4 at 25. Marsh states that she overheard a conversation between Virag and Barber on the day of Virag's termination hearing, agreeing that an unspecified employee in the Planning Department, of whom Virag was the supervisor, needed to be terminated. Id. at 27. Marsh did not testify that she heard Virag or Barber say Plaintiff's name, only that she thought the information may be important to "the person I believed they were speaking about." Id. at 26. Plaintiff otherwise fails to point to any corroborating evidence in the record. ECF No. 34 at 4. Furthermore, Virag's termination hearing occurred in August 2006. Id. Plaintiff was not terminated until March 2009. ECF No. 34 at 8. As Defendant points out, and as Plaintiff seems to agree in her opposition, Plaintiff's allegations regarding her right to speak out about illegal activities relate to her filing a complaint against Virag in May 2006. ECF No. 45-1 at 19; ECF No. 58 at 12. A conversation between Virag and Barber in which Plaintiff was not specifically named, and which occurred almost three years prior to her termination, is not sufficient standing alone to defeat summary judgment. Thus, Plaintiff has not met her burden to provide evidence establishing a genuine issue of material fact and Defendants' Motion is granted as to this claim.

### 2. Right to Freely Associate

Similarly, Defendants argue that Plaintiff has no evidence to support her fifth cause of action, in which she alleges that Barber infringed upon her right to freely associate. ECF No. 45-1 at 20. A plaintiff alleging an adverse employment action in violation of First Amendment rights must show that the protected conduct was a

12

substantial or motivating factor for the employer's action.  Strahan v. Kirkland, 287 F.3d 821, 825 (9th Cir. 2002).  Defendant asserts that although an investigation was conducted into Plaintiff's visit to Vurl Trytten's home, Plaintiff was not terminated and no action was taken against her on this basis.  Id.  In support of this argument, Defendant cites the declaration of Ann Merkle, the Personnel Manager for the County of Siskiyou, who stated that no action was taken against Plaintiff based on her visit to Trytten's home, but that an investigation of the incident led to the finding that Plaintiff had created a hostile work environment and must be terminated.  ECF No. 45-7 at 3.  Defendant also points to the Notice of Disciplinary Action issued to Plaintiff which lists the reasons for termination as incompetence or inefficiency, insubordination, and discourteous treatment of the public or other employees.  ECF No. 45-4 at 76.

In opposition to Defendant's Motion, Plaintiff asserts that Barber admitted in her own deposition that Plaintiff's visit to Trytten's home was one of the reasons Plaintiff was terminated.  ECF 58-4 at 15.  Plaintiff further argues, citing Plaintiff's deposition, that it is undisputed that she was disciplined and terminated due to her association with Jeff Fowle of the Planning Commission.  ECF No. 58 at 13.

The parties dispute whether any adverse action was taken against Plaintiff because of her associations with Vurl Trytten and Jeff Fowle.  While Ann Merkle states in her declaration that no action was taken against Plaintiff based on her visit to Trytten's home, Barber's own deposition testimony is to the contrary.  See ECF No. 45-7 at 3; ECF No. 58-4 at 15.  Moreover, although it is not listed as one of the grounds for termination, the facts underlying the grounds for termination do mention the visit to Trytten's home.  ECF No. 45-4 at 81.  Finally, in response to Defendants' Undisputed Fact No. 99 stating that the visit to Trytten's house was not a reason for Plaintiff's termination, Plaintiff points to the decision of the California Unemployment Insurance Appeals Board.  Pl.'s Resp. to DUF No. 99; ECF No. 58-1 at 18.  The decision of the appeals board notes that the Plaintiff's trip to Trytten's home was the "straw that broke

///

13

the camel's back," and the moment when the employer determined they could no longer tolerate the claimant as an employee. ECF No. 58-7 at 3.

Based upon the evidence provided by both parties, the Court cannot say as a matter of law that the visit to Vurl Trytten's home was not a substantial or motivating factor in the decision to terminate Plaintiff. Accordingly, Defendant's Motion is denied as to this claim. As for Plaintiff's contact with Jeff Fowle, it is undisputed that Plaintiff was reprimanded for sharing certain information with Fowle. See ECF No. 45-4 at 52; ECF No. 58 at 13. While Defendants contend and provide evidence to show that this discipline occurred in April 2008, Plaintiff alleges in her SAC that it occurred in December 2008. ECF No. 45-4 at 52; ECF No. 34 at 7. Plaintiff's allegation in this regard is unsubstantiated, and thus any claims relating to Plaintiff's discipline in April 2008 are barred by the statute of limitations, as stated in the prior order of this Court. See ECF No. 11 at 10; ECF No. 14. Furthermore, Plaintiff has provided no evidence to show that her termination was related to her association with Fowle. Thus, Plaintiff's claim that her right to freely associate was infringed upon must be limited to her association with Vurl Trytten only.

### C.     Other State Law Claims

Plaintiff's remaining causes of action allege, against all Defendants, claims for defamation and intentional infliction of emotional distress in violation of California law. ECF No. 34 at 9-10. The California Tort Claims Act provides that no suit for money or damages may be brought against a public entity until a written claim therefor has been presented to the public entity and acted upon by the board, or deemed to have been rejected by the board. Cal. Gov't Code §§ 905, 945.4. Similarly, one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment must have filed a claim against the public-entity employer pursuant to the same procedures for claims against public entities. Cal. Gov't Code §§ 950.2, 950.6. The timely filing of a claim is an essential element of a cause of action against a public entity,
///

and failure to file such a claim is fatal to the cause of action. Tietz v. Los Angeles Unified Sch. Dist., 238 Cal. App. 2d 905, 911 (1965).

Plaintiff filed a tort claim with the County on July 31, 2009. ECF No. 45-5 at 4. The claim was rejected by the County and the Notice of Rejection served on Plaintiff on October 16, 2009. ECF No. 45-6 at 8. The notice of rejection stated that pursuant to California Government Code section 945.6, Plaintiff had six months from the date the notice was served to file a court action on the claim. Id. Plaintiff's lawsuit was not filed until September 30, 2010. ECF No. 1. That time is well beyond the six month period. As such, Plaintiff's state tort claims are time-barred. Plaintiff argues in opposition that she never received the rejection notice of her tort claims from the County. ECF No. 58 at 7. However, even if true, Plaintiff's contention is not relevant. The six-month period runs from the date the notice of rejection is deposited in the mail, not the date it was actually received. Edgington v. Cnty. of San Diego, 118 Cal. App. 3d 39, 45-47. Accordingly, Defendants' Motion is granted for these claims.

### D. Immunity

Defendants also contend that they are entitled to immunity. ECF No. 45-1 at 23-24. Specifically, Defendants argue that the Board is protected by quasi-judicial immunity, Barber is entitled to qualified immunity, and all Defendants are protected by discretionary immunity. Id. The only causes of action Plaintiff alleged against the Board of Supervisors were the state law claims for defamation and intentional infliction of emotional distress. ECF No. 34 at 9-10. As indicated above, Defendants' Motion is granted for those claims, and thus the immunity of the Board need not be addressed here.

With respect to Barber, Defendants claim that she is entitled to qualified immunity because she acted in good faith. ECF No. 45-1 at 23. Plaintiff, on the other hand, asserts that Barber should not be entitled to qualified immunity because her actions in terminating Plaintiff violated Plaintiff's constitutional rights. ECF No. 58 at 15. The Supreme Court has held that government officials performing discretionary functions are

entitled to qualified immunity, shielding them from civil damages liability, so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Because a genuine issue of material facts exists as to Plaintiff's claim that she was terminated in violation of her right to freely associate, the Court cannot say that as a matter of law Barber's actions did not violate clearly established constitutional rights.  Accordingly, Barber is not entitled to qualified immunity.

Finally, Defendants contend that they are entitled to discretionary immunity from Plaintiff's state law claims under California Government Code § 820.2.  ECF No. 45-1 at 24.  Section 820.2 provides that a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion.  Because the only state law cause of action remaining is Plaintiff's claim against the County under FEHA for denial of a promotion, Defendants' claim is only relevant as to the County.  California Government Code § 815.2(b) provides, consistent with the immunity provided to public employees under § 820.2, that "except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  While the County would ordinarily be entitled to immunity for the discretionary acts of its employees, that immunity does not extend to claims under FEHA.  In DeJung v. Superior Court, 169 Cal. App. 4th 533, 547 (2008), the court found that "because FEHA states unequivocally that no employer, including public entities, may discriminate based on age when making employment decisions, FEHA functions as an exception the general grant of immunity under section 815.2(b)."  Accordingly, the County is not entitled to immunity from Plaintiff's FEHA claim

///

///

///

///

### E.  Plaintiff's Motion to Amend

Concurrently with her opposition to Defendant's Motion, Plaintiff filed a Motion to Amend her SAC.  ECF No. 60.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962).  However, leave need not be granted where to do so would constitute an exercise in futility.  Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

In seeking leave to amend her SAC, Plaintiff wishes to add two causes of action which had previously been dismissed, with leave to amend.  ECF No. 60-1 at 3.  Specifically, Plaintiff would like to include a claim for invasion of privacy and a claim for public disclosure of private facts.  Id.  Plaintiff alleges that she neglected to amend the claims because at the time they were dismissed, she was unrepresented by counsel.  Id.  These claims, however, were dismissed by a prior order due to Plaintiff's failure to allege compliance with the California Tort Claims Act.  ECF No. 29 at 2.  As outlined above, Plaintiff failed to file this action within six months following the rejection of her claims at the county level.  For this reason, Defendants are entitled to summary judgment on Plaintiff's claims for defamation and intentional infliction of emotional distress.  An amendment to include the new claims would suffer from the same fatal flaw, and to grant such a motion would be an exercise in futility.  Accordingly, Plaintiff's Motion to Amend must be denied.

///
///
///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment, or alternatively for summary adjudication (ECF No. 45), is GRANTED, in part, and DENIED, in part. Plaintiff's Motion to Amend her Second Amended Complaint (ECF No. 60) is DENIED.

IT IS SO ORDERED

Dated: March 28, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT